## PRICE, GUARDIAN, v. WILKINSON'S EX'RS.

1. Objections cannot be made at the final settlement of the estate, to the regularity of an order previously made by the court, for the sale of land. However irregular or unauthorized the sale may have been, until the order of sale is reversed, or vacated, the proceeds of the sale is assets in the hands of the personal representative.

2. The orphans' court has no power to marshal assets, by directing a sale of land, for the payment of debts, to secure the payment of pecuniary lega-cies. Yet when the orphans' court has improperly directed the sale of land, it cannot distribute the proceeds among infant heirs, as they cannot waive the irregularity of the sale in the orphans' court. Such a waiver could only be made in equity, if the Chancellor ascertained it was their interest to affirm the sale, and that in equity they were entitled to the money.

Writ of Error the Circuit Court of Limestone.

George B. Wilkinson, executor of John B. Wilkinson, ap-plied to the orphans' court for a final settlement, and filed his accounts and vouchers, &c., and upon the settlement it was ascertained by the court, that there was in his hands for dis-tribution, the sum of $3,577 85, which was decreed as fol-lows: to the widow and her present husband $1192 62, to G. S. B. Wilkinson, Reuben Wilkinson, John G. Wilkinson, Samuel B. Wilkinson, W. R. Mathews and wife, Elizabeth Wilkinson, and Charles L. Savage, each $340 74.

Upon the settlement, and distribution, Thomas Price, guardian of Ann Eliza Wilkinson, Sarah Alice Wilkinson, and

Seaborn J. Wilkinson, heirs of James R. Wilkinson, excepted to the opinion of the court, in making the distribution. From the exceptions taken, it appears, that by order of the judge of the orphans' court, on the petition of the defendant in error, the real estate of the testator had been sold for the sum of $5,350—that the wards of Price were the children of James R. Wilkinson, son of the intestate, but who died before his father—that it appeared from an inspection of the petition for sale of the real estate of the testator, that neither the said Price nor his wards were cited, or notified of that proceeding, or made parties to the petition, and knew nothing of the petition, order or sale; and it further appeared, that there was sufficient personal property of the testator to pay all his debts without selling his land, and that the money arising from the sale of the lands, was appropriated to the payment ef his debts.

The court decided that the children of the said James R. Wilkinson, had no interest in the sale of the real estate, and that the money arising from the sale was properly applied to the payment of the debts of the testator.

The will of John B Wilkinson was also produced, having but two witnesses thereto, as follows:

I, John B. Wilkinson, being of sound mind, &c., do make &c. First of all, my just debts to be paid. Secondly, I give and bequeath to my son, S. J. Wilkinson two thousand dollars, in cash, at four equal payments, say five hundred dollars annually until the whole is paid, as his moiety of my estate. Thirdly, having given my son James Ray Wilkinson, during his natural life, as much, if not more than the rest of my children will get, I give to each of his children one hundred dollars, to be placed out at interest until they marry or become of age, to be managed by my executors hereinafter named. Fourthly, I give my daughter Mildred my piano, and to my daughter Anne my gold watch, chain and trinkets, her mother to take care of it for her, until she is able to take care of it for herself. My youngest daughter Elizabeth, to have my likeness set in gold.

It is my wish, and desire, that none of my slaves should be disposed of separately, until my children arrive at mature age, in that case I wish my property to be divided into two

equal parts, one part to be divided among my children, share and share alike, the other half I give and bequeath to my dearest wife, to have and to hold, and to use as her own, during her natural life, and no longer, and then to revert back to my children, and be equally divided amongst them as the other moiety. [Here follows the appointment of the executors and guardians.]

From the decree of the orphans' court, the heirs of James R. Wilkinson, by their guardian, prosecuted a writ of error to the circuit court of Limestone, and there assigned for error—that the court erred in adjudging the proceeds of the sale of the real estate of the decedent, to be applied to the payment of the debts of the deceased, when the said debts should have been paid out of the personal estate.

The circuit court affirmed the judgment of the orphans' court, from which this writ is prosecuted.

McCLUNG, for plaintiff in error.

WM. COOPER, contra. In the marshalling of assets, to pay debts and specific legacies, resort will be first had to the personal estate not bequeathed, and for want, or insufficiency of that fund, resort will be had to the lands descended. [Ram on Assets, 373 ; 2 Chan. Ca. 4 ; 1 P. Wm. 730, 678 ; 3 Id. 365 ; 2 Atkins, 430-4 ; 2 Powell on Dev. 672-7, 671, 716-17; 3 Johns. C. 148 ; 1 Dess. 500 ; 3 Id. 47 ; 6 Munf. 64 ; 2 Vesey, 2 ; 7 Id. 503 ; 3 Id. 114, 552 ; 1 Atk. 505 ; 3 Id. 556; 2 P. Wm. 544.]

The legacies mentioned in the will of the testator, are specific, or money legacies, and entitled to protection, as long as there is unexhausted real estate descended. [Ward. on Leg. 351 ; 1 Cox, 254 ; 3 Vesey, 107 ; 5 Id. 461, 545 ; 18 Id. 132; 1 B. & B. 317 ; 3 Swanston, 411 ; 2 Vern. 538, 747 ; 4 Brown C. C. 537 ; Ram on Assets, 385 ; 1 Atk. 416 ; 2 Ves. 516.

A general description, as " all my books," is a specific legacy. [1 P. Williams, 597 ; 2 Vernon, 538 ; 2 Vernon, 688 ; Prec. in Ch. 392 ; 1 Vesey, 273 ; 5 Id. 149; 9 Price, 98.]

Demonstrative legacies, as "a portion of $2000," are spe-

cific.   [Ward on Leg. 18, 21, 370, 378; 1 Merivale, 178; 2 Vesey, 640; 9 Id. 152.]

The will requires the slaves to be kept together, until the children arrive at mature age, and then the property to be divided into two parts, thus clearly showing he desired his slaves and such other of his property as should remain, after debts and money legacies, should be divided between his children and his wife.   The will also expressly declares, that the grand children shall have no part of the estate, except one hundred dollars each.

ORMOND, J.—John D. Wilkinson, the testator of the defendant in error, made his will, intending as it would appear, to make a final disposition of all his estate, but died intestate as to his land, the will being attested by but two witnesses. It appears that the land was sold by order of the orphans' court, on the petition of the defendant in error, but for what purpose, or upon what allegation by the executor, does not appear, nor is the petition, or the proceedings had upon it, a part of this record.   Upon the final settlement, certain minors, grand children of the deceased, to whom, by the will, $100 each had been given, as their portion of the estate, appeared by their guardian, and objected as it would seem, to the sale of the land, because they were not parties to the petition, and had no notice of the application for the sale of the land, and that no citation issued to them.   The court held that they had no interest in the land, and were not entitled to notice.   This, considered as a legal proposition, was clearly erroneous.   The testator having died intestate as to his land, it descended upon his heirs at law, of whom these minors were a part, and being directly interested, should have been parties to a petition for the sale of the land, and cited to appear.   But whatever effect this omission may have, upon the proceedings for the sale of the land, as long as the order for its sale is in force, not reversed or vacated, the proceeds of the sale, is assets in the hands of the personal representative, and the objection that the sale was irregular, or unauthorized, cannot be taken at the final settlement.

The question which it appears was intended to be made in the court below, and here, was, as to the disposition of the

proceeds of the sale of the land; the plaintiff in error con-
tending that as there was personal property sufficient for the
payment of the debts of the deceased, they were entitled to
their distributive share of the proceeds of the sale of the land,
as to which their grandfather died intestate, whilst the court
permitted the executor to appropriate it to the payment of the
debts of the deceased, thereby exhausting the fund, and leav-
ing nothing for distribution, although it was admitted there
was a sufficiency of personal property to pay all the debts
of the deceased.

The right of the court, thus to direct the appropriation of
the avails of the land, is defended in this court, upon the
ground, that the orphans' court has the power to marshall the
assets, and to resort to lands descended, for the payment of
debts, when there is an insufficiency of personal property, to
discharge the specific legacies, as well as to pay the debts.

The marshalling of assets, as it is called, is a familiar doc-
trine of the English chancery, and is an arrangement, or set-
ting in order, by the court of the assets of a deceased person,
so that all claimants may be satisfied. Thus, if a specialty
creditor, whose debt is a *lien* upon the real estate, obtained
satisfaction out of the personal assets, a simple contract cre-
ditor, who cannot resort to the real estate, will in equity, be
placed in the condition of the specialty creditor, the payment
of whose debt has exhausted the fund, from which his debt
would otherwise have been satisfied.

This doctrine has been applied to pecuniary legatees, when
the personal estate has been exhausted by the payment of
specialty creditors, as otherwise the intention of the testator
would be defeated. The whole doctrine rests upon that
principle of equity, that when one claimant has more than
one fund to resort to, and another only one, the first shall re-
sort to that fund, on which the second has no *lien*. For a
full exposition of the rule, and its various modifications, see
Clifton v. Burt, 1 P. Will. 678, and the elaborate note of Mr.
Cox; also Ram. on. Assets, 374, 1 Story's Eq. 531. How
far this rule, as it regards such cases as this, has any applica-
tion in this State, where specialty debts, and debts by simple
contract, are placed upon the same footing, as it respects the
right to satisfaction, out of the property of the deceased; or

whether if it obtains here, it must be confined to those cases, where one creditor has an actual *lien*, (as for example, a mortgage,) is a most important question, which we shall not now discuss, because it is very clear, the orphans' court has no power to marshall assets.

The only powers which the orphans' court can rightfully exercise, are those which are conferred upon it by the statute calling it into existence, or which necessarily result from the subject over which it is authorized to exercise jurisdiction. The powers conferred on it, are not adequate to, nor were they conferred for any such purpose as the marshalling of assets, which is purely a creature of a court of equity. To the exercise of such a power, it is absolutely necessary to charge land, with the payments of debts, and legacies, which it is not primarily responsible for, which could only be, by directing the land to be sold for this purpose. Yet its power to sell land, is distinctly and plainly defined. It may, on the petition of the executor or administrator, direct its sale, when the estate is entirely insolvent, or when the personal property is insufficient for the payment of the debts—or where the real estate cannot be justly divided without such sale. [Clay's Dig. 224, § 16,] So it may, on the petition of any one interested, and proof of the fact, that the estate or those interested in it, will be less injured by a sale of land, than of slaves for the payment of debts, direct a sale of the land of a deceased person. [Ib. 195, § 18.] It is perfectly obvious, that neither of these statutes, conferred on the orphans' court the power to sell land, which had descended to the heir, for the protection of a legatee, whose legacy would otherwise be diminished, or exhausted by the payment of debts—which would be in effect directing the sale of land descended to the heir, for the payment of a pecuniary legacy.

Nor is any such power derivable, from the subjects over which it has jurisdiction, as the probate of wills, grant of letters testamentary, and of administration, and the settlement and distribution of estates. In the discharge of these duties, it proceeds according to law, under the direction of the statutes passed for its government, and can exercise no power of an equitable nature, unless conferred by statute.

23

It would seem from the record, that the plaintiffs in error applied to the orphans' court, for distribution of the proceeds of the sale of the land, but as the orphans' court had no power to direct the sale of the land which had descended to the heirs, it results that it cannot distribute the proceeds of the sale among them, as the infants cannot waive the irregularity of the sale. Such a waiver could be made alone in equity, if the chancellor ascertained that it was to their interest to take the proceeds of the sale, and that in equity they were entitled to the money.

It results from this examination, that there is no error in the record, of which the plaintiffs in error can complain, the decree of the orphans' court must therefore be affirmed.